J-S22014-15
J-S22015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: T.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.C., NATURAL MOTHER | : | |
| | : | No. 1724 WDA 2014 |
| | : | |

Appeal from the Order Entered October 1, 2014
in the Court of Common Pleas of Butler County
Civil Division, at No. D.P. 56 of 2012

| | | |
|---|---|---|
| IN RE: T.J., ADOPTION OF T.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.C., NATURAL MOTHER | : | |
| | : | No. 1725 WDA 2014 |
| | : | |

Appeal from the Decree Entered September 30, 2014
in the Court of Common Pleas of Butler County
Civil Division, at No. D.P. 52 of 2013

| | | |
|---|---|---|
| IN RE: T.J. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.J. | : | |
| | : | No. 1893 WDA 2014 |
| | : | |

Appeal from the Decree September 30, 2014
in the Court of Common Pleas of Butler County
Civil Division, at No. D.P. 52 of 2013

BEFORE: PANELLA, J., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED JUNE 09, 2015**

---

[*] Retired Senior Judge assigned to the Superior Court.

In these consolidated[1] and related appeals, T.C. (Mother) and T.J. (Father) appeal the decrees of the Court of Common Pleas of Butler County, entered September 30, 2014, respectively, that terminated their parental rights to their daughter, T.J. (Child), born in December 2009. Mother also appeals the trial court order entered October 1, 2014, that changed Child's goal to adoption. We affirm.

Butler County Children and Youth Services (CYS) took custody of Child on June 29, 2012, upon finding that she lacked proper parental care and control. At the time of her placement, Father was incarcerated, and Mother had been arrested on charges of possession with intent to deliver a controlled substance.

Mother did not provide care for Child for nearly a year before CYS assumed custody, having given guardianship of Child to her maternal grandmother (Maternal Grandmother) on July 26, 2011. After Maternal Grandmother decided she was no longer able to care for Child, she placed Child with a family friend. Child was living with this family friend at the time she entered placement with CYS. That family friend admitted she would not be able to pass the required clearances for placement through CYS because of her criminal background.

---

[1] This Court *sua sponte* consolidated Mother's appeals, Docket Nos. 1724 and 1725 WDA 2014. We address Mother's and Father's appeals in this combined memorandum simply for ease of disposition.

In July 2012, CYS placed Child with the child's maternal great-grandmother (Maternal Great-Grandmother) but, about two months later, in September 2012, CYS removed Child from Maternal Great-Grandmother's home and placed her in a foster home, where she remained at the time of the hearing in this matter. Child has not lived with Mother since July 2011. At the time of the hearing, Mother had not seen Child since February 2013, when Child was three years of age.

CYS has been involved with Mother since 2003. Mother has had three of her other children placed in CYS's custody, two of whom have been adopted, and the third who has been placed with the child's paternal grandmother.

Mother was arrested the day CYS assumed custody of Child. She spent approximately two years in jail, and was released in the spring of 2014. During her incarceration, Mother participated in the Parole Program, money management classes, anger resolution class, Impact of Crime on Victims, and a drug and alcohol program. Mother did not participate in any parental care classes or parenting techniques classes while incarcerated.

When Child resided with Maternal Great-Grandmother, Mother had contact with Child via telephone and letters. Once Child was placed in her current foster home, the phone calls stopped, but Mother continued to send Child about one or two letters per month.

Since her release, the CYS caseworker has not had any contact with Mother's parole officer. Mother had not provided the caseworker with any information regarding the terms of her release or anything regarding her drug use. Mother has not completed any drug screens with the caseworker, although she testified that she is completing drug screens with her parole officer.

Mother called Child's caseworker on May 13, 2014, and set up a meeting with the caseworker. Mother, however, did not keep that appointment, and did not provide a reason for failing to attend. Mother did not attempt to reschedule.

Mother did not present any evidence that she is complying with her Permanency Plan. The caseworker has attempted to call Mother and Mother's family members, but has been unable to leave any messages due to their voice mailboxes always being full.

The trial court found the following.

Mother testified that she did not contact the caseworker again because she was 'too upset' and was 'denied visits' with Child and therefore wanted to go through her lawyer. No one on behalf of Mother ever contacted the caseworker following the initial contact by Mother to set up the meeting that Mother failed to attend. Mother claimed the caseworker was lying in her testimony, and that Mother has done everything she has been asked to do. Mother places the responsibility on everyone else and fails to take any responsibility herself. The [c]ourt finds her testimony as to the caseworker not credible.

Trial Court Opinion 1/6/15, at 4-5.

At the time of the hearing, Mother was living with Maternal Grandmother, and her only source of income was public assistance.

Child is currently doing well in her foster home, and is bonded to her foster parents, whom she calls mom and dad. Child is involved in family activities and is close to her numerous cousins. Developmentally, Child is doing well and is on track. Child never mentioned Father in any of her therapy sessions and only mentions Mother in a negative light. Child is in a stable, pre-adoptive foster home, where she is thriving.

Father lived with Child until his arrest in January 2011. That was the last time Child resided with Father. Father has not provided any monetary support to Child since his incarceration. Father was incarcerated when Child entered CYS custody. Father only had contact with Child a couple of times when she lived with Maternal Grandmother, and that was his only contact with Child until he was incarcerated. At the time of the hearing, Father was incarcerated at SCI Mahanoy—and had been for the previous three years. Prior to that, Father had been incarcerated for a combined total of approximately nine years; each time the charges were related to drugs and drug dealing.

Father has participated in a drug and alcohol program and he attends Narcotics Anonymous meetings once a week. Father has not participated in any parenting classes, nor has he had any therapy or counseling for his mental health. He testified that he is not sure if parenting classes are

available and that his counselor has not spoken to him about any of those options. Father has not signed any releases for his medical treatments or counseling. If released from incarceration, Father will be required to live at a halfway house. He does not know how long he would have to stay at halfway house, and does not know if Child would be permitted to reside there as well.

Father's permanency plan required Father to participate in parenting programs that may be available to him in jail. Father stated that that he has not inquired about any parenting classes or additional counseling outside of the drug and alcohol counseling he was attending. Father failed to sign the releases that would permit CYS to contact his prison counselor to discuss his progress.

The trial court found that Father had made minimal to no compliance or progress towards alleviating the circumstances that necessitated Child's placement in that he was not communicating with his attorney or CYS nor was he complying with the Permanency Plan.

Child's caseworker, Jessica Fend, testified that she has not had any contact with Father since her assignment to Child's case in August 2013, and she has not received any documentation about Father's participation in classes. According to Ms. Fend, Father has not performed any parental duties since her assignment to Child's case. The trial court found, "[A]lthough [his] intentions are good, Father can produce no evidence that

he has [participated] or will participate in the Permanency Plan or that the circumstances that led to Child's detention will be remedied." Trial Court Opinion 1/6/15, at 5.

The trial court entered its decree terminating Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5) and (8) on September 30, 2014 and entered its order changing Child's goal to adoption on October 1, 2014, and. Mother filed her notice of appeal and concise statement of errors complained of on appeal on October 21, 2014.

The trial court entered its decree terminating Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (8) on September 30, 2014. Father filed his timely notice of appeal and concise statement of errors complained of on appeal on October 30, 2014.

Our standard of review is as follows.

> In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

> Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

We note our standard of review of a change of goal is as follows.

When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion. In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record.

*In the Interest of S.G.*, 922 A.2d 943, 946 (Pa. Super. 2007).

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

- 8 -

. . .

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.  In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a).  ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re T.F.***, 847 A.2d 738, 742 (Pa. Super. 2004) (citations omitted).  Further,

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.  Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (internal citations omitted).

The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 331 A.2d 172 (Pa. 1975). There the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), that the petitioner for involuntary termination must prove "[t]he repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parent." *Id*., at 173.

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. *See In re E.M.*, 620 A.2d 481, 484-485 (Pa. 1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. *See In re K.K.R.-S*., 958 A.2d 529, 533 (Pa. Super. 2008).

In regard to incarcerated persons, our Supreme Court has stated:

> [I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that [sic] the causes of the incapacity cannot or will not be remedied.

*In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012).

. . .

> [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). *See*, *e.g.*, *Adoption of J.J.*, [511 Pa. at 605], 515 A.2d at 891 ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); *[In re:] E.A.P.*, [944 A.2d 79, 85 (Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs). If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

*Id*., at 830-831.[2]

---

[2] The Supreme Court cited its decision in *In re: Adoption of McCray*, 450 Pa. 210, 331 A.2d 652, 655 (1975), for the proposition that termination may

Our examination of Mother's brief reveals that she has waived the issues she raised on appeal. In the argument section of her brief, Mother does no more than re-examine the facts of this case and asks us to reach a different conclusion. Mother fails to support her argument by any citation to legal authority. Mother makes no effort whatsoever to link the facts of her case to the law. In sum, Mother does not attempt to develop a coherent legal argument to support her conclusion that the trial court erred in terminating her parental rights and she has, therefore, waived that argument. "The failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119." *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) (internal citation omitted). "[A]rguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." *Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) (internal citations omitted). *See Chapman-Rolle v. Rolle*, 893 A.2d 770, 774 (Pa. Super. 2006) (stating, "[i]t is well settled that a failure to argue and to cite any authority supporting an argument constitutes a waiver of issues on appeal").

---

be appropriate for an incarcerated parent who has failed to perform his parental duties for a six-year period. *See id*., at 828.

In any event, the record reveals that the trial court's decision to terminate Mother's parental rights under Sections 2511(a)(2) and (b), and to change Child's goal to adoption is supported by clear and convincing evidence, and that there was no abuse of the trial court's discretion.

Turning to Father's appeal, with the exception of his final issue, in which he complains that CYS failed to assist him in maintaining a relationship with Child, Father has also failed to support his argument in his first three issues with any citation to legal authority and has waived those issues. *See Commonwealth v. Beshore*, *supra.*; *In re Child M.*, *supra*.

In his final issue, Father relies on this Court's decision in *In the Interest of D.C.D.*, 91 A.3d 173 (Pa. Super. 2014), to argue that we should reverse the trial court because CYS failed to assist Father to establish and maintain a relationship with Child. This Court's decision in *D.C.D.*, did stand for the proposition that a trial court could consider whether an agency such as CYS had made reasonable efforts to maintain a parent's relationship with a child. This Court's decision in *D.C.D.*, however, was reversed by our Supreme Court in *In re D.C.D.*, 105 A.3d 662 (Pa. 2014), in which the Court stated, "[n]either subsection (a) nor (b) [of 23 Pa.C.S.A. § 2511] requires a court to consider the reasonable efforts provided to a parent prior to termination of parental rights." *Id*., at 672.

Father argues that CYS failed to assist him because it never offered him visits with Child while in prison. Father's argument would fail even if

this Court's decision in **D.C.D.** were still our law. We quote the trial court's analysis of this issue, with approval.

> Father did not attempt to maintain contact with the caseworker or Child. He did not reach out and send letters or gifts to Child nor did he communicate via telephone with her. CYS gave Father a Permanency Plan which listed all the requirements Father needed to do in order to maintain a relationship with Child, but he failed to perform any of the said requirements. The record does not support the claim that there was overwhelming evidence that showed the Agency failed to assist Father establish or maintain a relationship with Child or that the Agency's conduct prevented the establishment of any bond between Father and Child. The record supports the opposite.

> Furthermore, Father was represented by counsel throughout the Dependency Hearing. At trial, Father failed to present any evidence that, during any of the Permanency Review Hearings, he or his counsel expressed a concern about or ever a question about how to communicate with Child while incarcerated. In fact, when he participated at the hearing, he expressed his full understanding and agreement with Child's Plan. There is no evidence to support Father's claim that CYS impaired his ability to write letters or otherwise communicate with Child. Rather, Father did nothing to promote a relationship with Child while incarcerated, and then tried to blame CYS for his lack [sic].

Trial Court Opinion 1/6/15, at 18.

The record reveals that the trial court's decree terminating Father's parental rights under Sections 2511(a)(2) and (b), and its order changing Child's goal to adoption are supported by clear and convincing evidence, and that there was no abuse of the trial court's discretion. We, therefore, affirm the decrees terminating the parental rights of Mother and Father, and the order changing Child's permanency goal to adoption.

Order at 1724 affirmed. Decrees at 1725 WDA 2014 and 1893 WDA 2014 affirmed.

Judge Lazarus joins in the memorandum.

Judge Strassburger files a concurring statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/9/2015